# CHARLESTOWN.

LLOYD *et al. v.* KYLE *et al.*

Submitted June 17, 1885.—Decided September 26, 1885.

1. Under the provisions of our statute, sec. 3, ch. 44 of Acts 1877, and sec. 3, ch. 157 of Acts 1882, no petition can be entertained by this Court for an appeal from any decree of any character, which was rendered more than five years before the petition is presented for the appeal. (p. 539.)

2. Where an appeal is properly obtained from an appealable decree either final or interlocutory, such appeal will bring with it for review all preceding non-appealable decrees or orders, from which have arisen any of the errors complained of in the decree appealed from, no matter how long they may have been rendered before the appeal was taken. (p. 440.)

3. A party can not be granted an appeal upon a petition assigning

errors in *appealable* decrees rendered more than five years before his petition is presented, although the errors thus assigned may be the foundation of and be given effect in a subsequent decree rendered within five years, from which an appeal is also prayed. The petition must show that the party is entitled to an appeal from such subsequent decree alone, or the appeal can not be properly allowed, and if inadvertently allowed, it will be dismissed (p. 540.)

The facts of the case are stated in the opinion of the Court:

*W. W. Arnett* for appellant.

*Ewing, Melvin & Riley* for appellee.

SNYDER, JUDGE:

Stacy Lloyd, being the owner of two tracts of land, containing respectively 7,000 and 2,689 acres lying in Wetzel county, sold and by deed, dated May 8, 1847, conveyed with special warranty of title to Robert Kyle 2,000 acres to be selected by Kyle in three separate parcels from the two tracts aforesaid. In 1853 Kyle had a survey made which purported to contain 2,000 acres, but the metes and bounds of which actually embrace 4,000 acres. Lloyd having died, Kyle in 1855, brought suit in the circuit court of Wetzel county against the heirs of Lloyd to have the land partitioned and his said survey established and confirmed as the land to which he was entitled under the aforesaid deed from Lloyd. By a decree entered in said suit in 1856, the said survey was established and confirmed and a commissioner appointed to convey the land to Kyle according to the metes and bounds of said survey. Pursuant to said decree the commissioner by deed, dated April 20, 1857, conveyed the land in severalty to Kyle. Between the date of this deed and the year 1868, Kyle conveyed 3,469 acres of said survey, 1,557 acres to innocent vendees for value and 1,912 acres to his children without value.

In July 1870, the heirs of Lloyd instituted this suit in the circuit court of Wetzel county against Kyle and his grantees. They alleged in their bill that the land surveyed by Kyle and conveyed to him as 2,000 acres was in fact 4,000 acres; that the survey was fraudulent and the decree establishing and confirming the same was procured by misrepresentation and

fraud ; that all the grantees of Kyle had notice of such fraud; and praying that the said survey as well as the conveyance of the land to Kyle and the conveyances by him to his grantees might be set aside, and a correct assignment made to him of the 2,000 acres sold to him by their ancestor, &c.

Several answers were filed to the bill, many depositions taken by both sides, and the cause coming on to be heard on the pleadings and proofs, the court on April 8, 1876, entered a decree in which, after stating formally its findings on the matters in controversy, it adjudged, ordered and decreed that the survey made by the said Robert Kyle, the decree entered in 1856 in the suit of Kyle confirming the same, and the deed made by the commissioner to Kyle pursuant to said decree be annulled and set aside "as obtained by the fraudulent procurement of the said Robert Kyle, except as to the 1,557 acres found to have been sold and conveyed to innocent purchaser by said Kyle, and also 443 acres of the land conveyed by said Kyle to Henry Kyle, making in the aggregate 2,000 acres to which the said Robert Kyle was entitled under his original conveyance from Stacy Lloyd." The decree then appoints three commissioners, Francis Doran, S. J. Robinson and John McCaskey and directs them to go upon the land in the bill mentioned and set apart 2,000 acres thereof according to the provisions of the deed of May 8, 1847, from Stacy Lloyd to Robert Kyle and to so set apart the same as to include the 1,557 acres conveyed to innocent purchasers by Kyle and 443 acres of the land conveyed to Henry Kyle and to give to the latter as much of his improved land as practicable, and directing the commissioners to return a plat or survey of said 2,000 acres as laid off by them and report their proceedings to the court.

At the April term 1877, the court made an order substituting A. P. Brookover in the place of Francis Doran as one of the commissioners and directing him and the two other commissioners, Robinson and McCaskey, to make the partition of the land as required by the former decree of April 8, 1876.

Upon the petition of Henry Kyle, one of the defendants in the cause, an appeal was allowed, March 19, 1881, by this Court from the aforesaid decree of April 8, 1876 ; and this

Court, on November 5, 1881, dismissed said appeal on the motion of the appelees, for failure of the appellant to have the record printed or to deposit with the clerk money to pay for printing the same as required by law.

Subsequently, the circuit court entered an order, February 1, 1882, substituting Augustus Wyatt for John McCaskey, who had become physically unable to act, as a commissioner, and directing him and the two other commissioners formerly appointed to make partition of the land as required by the said decree of April 8, 1876.

The commissioners made their report setting apart 2,000 acres of land as the amount conveyed by Lloyd to Kyle in the manner required by the decree of April 8, 1876. This report was not excepted to by any one. The court by a decree made January 30, 1883, confirmed said report and awarded a writ of possession to place the plaintiffs in possession of all the land embraced in the survey made by Robert Kyle not included in the 2,000 acres assigned to the grantees of Kyle by the report of the commissioners aforesaid. None of the decrees mention or direct the payment of the costs of the suit.

In January, 1884, the said Henry Kyle filed an "amended and additional petition," stating therein, he "is advised that inasmuch as the said decree heretofore appealed from was an interlocutory decree and no final decree was entered until January 30, 1883, he may still have an appeal from them notwithstanding the lapse of five years since the rendition of the former;" that "relying upon the grounds of error assigned in his former petition, and adding the still further specification of error that the decree of January 30, 1883, is within the law a repetition of the errors of the decree of April 8, 1876, he now again prays an appeal from the said decrees of April 8, 1876, and of January 30, 1883."

Upon this petition, this Court, on January 28, 1884, allowed the present appeal.

The appellees, as a preliminary question, submit that the appeal was improvidently allowed and should therefore, be dismissed by this Court. This presents an important question and one which has never been directly passed upon by this Court. Its determination involves the interpretation of

68

of our statute on the subject. The statute in force when the first appeal was allowed and dismissed—ch. 44, Acts of 1877 —and that in operation when the present appeal was granted —secs. 1, 2 and 3 of ch. 157 of Acts 1882—are as to the question now before us precisely the same, and it is, therefore, unimportant to decide which of these statutes should control our decision here as the conclusion must necessarily be the same according to either.

The Virginia Code of 1849, provided that "no petition shall be presented for an appeal from, or writ of error or *supersedeas* to,   *   *   *   any *final* judgment, decree or order, whether the Commonwealth be a party or not, which shall have been rendered more than five years before the petition is presented." Sec. 3, ch. 182, p. 183.

Such was the statute of Virginia long before the Code of 1849, and such has been the law of that State ever since. Sec. 3, ch. 178, Code of Va. of 1873, p. 1136.

The statute of Virginia was in force in this State until April 1, 1869, when the Code of 1868 took effect. By that Code the word *final* which I have italicised in the Virginia statute was omitted.—Sec. 2, ch. 135, Code 1868.

The act of December 21, 1872, restored the word *final* and thus made the law substantially as it had been prior to the Code of 1868.—Sec. 3, ch. 17, Acts 1872-3, page 57.

This act was repealed by the Act of February 16, 1877, and this latter act, as before stated, is as to the question now before us the same as the act of 1882. It provides :

1.—"A party to a controversy in any circuit court may obtain an appeal, writ of error or *supersedeas* to the supreme court of appeals from a judgment, decree or order therein in the following cases :

*First.*—In civil cases, where the matter in controversy, exclusive of costs, is of greater value or amount than $100.00.

   *   *   *   *   *   *   *   *   *   *

*Seventh.*—In any case in chancery, wherein there is a decree or order dissolving or refusing to dissolve an injunction, or requiring money to be paid, or real estate to be sold, or the possession or title of the property to be changed, or *adjudicating the principles of the cause,* &c., &c.

3.—"No petition shall be presented for an appeal from, or writ of error or *supersedeas* to, *any* judgment, *decree or order*, whether the State be a party thereto or not, which shall have been rendered or made more than five years before such petition is presented."—Ch. 44, Acts 1877, p. 52.

The language of this statute, if interpreted literally, would · unquestionably make the limitation of five years apply not only to *final* decrees but to all appealable *interlocutory* decrees or orders. Such a construction could not of course have been given to the Virginia statute, because it, while providing for appeals from interlocutory decrees and orders, confines the limitation of five years to *final* decrees only. It is apparent, therefore, that the Virginia decisions construing and applying the latter statute, can give very little, if any, aid in the construction of our statute. It can scarcely be supposed that the legislature could have made such a fundamental charge in the law unless it was intended for some significant purpose. The alteration, as we have seen, was first made in the Code of 1868, then in 1872 the old law was restored, and then in 1877, the alteration was again made and has been continued ever since. This persistence in effecting and preserving the change is strong evidence that it was not made inadvertently, but advisedly and for a purpose. This purpose may be readily divined when we consider it has been always held, under the Virginia statute, that there is not and never has been any limitation to the right of appeal from interlocutory decrees so long as the case is pending in court.—*Kendrick* v. *Whitney*, 28 Grat. 646.

Interlocutory decrees " requiring money to be paid, or real estate to be sold, or the possession or title of property to be changed, *or adjudicating the principles of the cause,*" and especially the last, very nearly, in their nature and effect, approximate final decrees, and it is often difficult to distinguish the line that separates them; consequently, if there be any sound policy in prescribing a limit to appeals from final decrees the same policy must apply to such interlocutory decrees as possess the same right of appeal. Acts of limitation are based upon considerations looking to the peace and repose of society. The legislature may have considered with much reason, that the policy of Virginia which fixed no limit to

appeals from any class of interlocutory decrees, was unwise, and that sound policy required that there should be a limit, at least to such interlocutory decrees, as approximate final decrees in their nature and effect.

It is not required for the purposes of this cause to decide to what extent the legislature of this State intended by the act of 1877, to change the policy of the Virginia statutes. It is sufficient to say, that under our statute, no petition can be entertained by this Court for an appeal from any decree of any character which was rendered more than five years before the petition is presented. Such is the positive and unequivocal mandate of the statute, and it is susceptible of no other interpretation. It is not denied that when a party is entitled to, and obtains, an appeal from either a final decree or an appealable interlocutory decree, such appeal will bring with it for review all preceding non-appealable decrees and orders from which have arisen any of the errors complained of in the decree from which the appeal is taken, no matter how long they may have been made before the appeal was taken. *Camden* v. *Haymond*, 9 W. Va. 680 ; *Steenrod* v. *Railroad Co.*, 25 *Id.* 133.

In all such cases, however, the party must be entitled to an appeal, and obtain it, from a decree which was rendered not more than five years previous to the time he presents his petition. This Court, or the judge to whom the petition is presented, can not look into or regard for the purpose of granting the appeal, any errors assigned or complained of in decrees or orders made more than five years before the petition is presented, unless such errors were committed in decrees or orders which were not appealable. The party can not present his petition for an appeal and have the appeal allowed upon errors assigned in appealable decrees rendered more than five years before the petition is presented, although the errors thus complained of may be the foundation of, and given effect in, a subsequent decree rendered within five years from which an appeal is also prayed. If he is not entitled to an appeal from such subsequent decree for errors committed therein independently of any errors committed in such former appealable decrees and which are merely carried into effect by the subsequent decree, the appeal can not be allowed

and if inadvertently allowed it will be dismissed.   *Moore* v. *Johnson*, 24 W. Va. 549.

According to the foregoing interpretation of our statute, which I regard as the only reasonable one that can be given to it in view of its history and unequivocal language, it is unnecessary to determine whether or not the aforesaid decree of April 8, 1876, was a final decree.   It was unquestionably an appealable decree and an appeal was in fact allowed from it by this Court.   It fully adjudicated the principles of the cause and settled the rights of the parties.   *Middleton* v. *Selby*, 19 W. Va.  167;  *Core* v. *Strickler*, 24 *Id.* 689.

The subsequent decree of January 30, 1883, merely carries into complete effect the said decree of April 8, 1876.   It adjudicates no new principle or controversy.   It simply confirms a report of commissioners made in pursuance of said former decree and to which there was no exception.   No error in it is assigned or complained of other than that, in effect, it is a repetition of the former decree.   The repetition complained of amounts merely to a suggestion that it did not set aside the former decree and correct the alleged errors therein.   There is, therefore, no error in this decree for which an appeal could be properly allowed by this Court; and the present appeal having been granted more than five years after the decree of April 8, 1876, had been rendered, the appeal in this cause was improvidently awarded and must, consequently, be dismissed.

DISMISSED.